.W. A. CLARK, Appellant, v. A. G. CAMPBELL, Respondent.

CORPORATIONS—SALE OF STOCK—ESCROW—DIVIDENDS—WHO ENTITLED TO.

1. The deposit of mining stock as an escrow, with a writing authorizing its purchase by a certain person for a certain price within a certain time, is not binding as an escrow, in the absence of a binding contract therefor between the parties.

2. Dividends declared on corporation stock belong to the persons owning the stock at the time the dividends are declared.

3. Where mining stock is deposited under a binding escrow agreement that it shall pass to a certain person on the payment of a certain price within a certain time, and the price is paid by such time, dividends declared before the price is paid do not belong to the purchaser.

(Decided June 19, 1901.)

Appeal from District Court, Salt Lake County.—*Hon. A. N. Cherry,* Judge.

Action by W. A. Clark against A. G. Campbell to receive a dividend on certain mining stock. From a judgment in

Clark v. Campbell.

favor of defendant and an order denying a new trial, plaintiff appeals.

AFFIRMED.

Action to recover $19,000, the amount of a dividend upon certain mining stock. Under the instructions of the court so to do, the jury returned a verdict for the defendant, and, after motion for new trial, duly made and overruled, plaintiff appeals. The facts are that, in pursuance of negotiations between the defendant and one L. C. Trent, agent of plaintiff, on October 29, 1898, defendant signed the following instrument in writing, and deposited the same, together with the mining stock herein mentioned, with Wells, Fargo & Co., bankers, Salt Lake City, to-wit: "Escrow. To Wells, Fargo & Co., bankers, Salt Lake City: I inclose 95,112 shares of the capital stock of the Ophir Hill Mining Company, of Utah, represented by certificates numbered 138, 102, 69, 115, and 113. I also inclose 1,000 shares of the capital stock of the Ophir Hill Mining and Concentrating Company, represented by certificates numbered 1, 4, 15, 16, 3, and 2. All said certificates are indorsed in blank, except the certificates in favor of W. B. Stanley, whose indorsement I will secure. If L. C. Trent, or his agent, shall pay to my credit at your bank the sum of $75,000 on or before November 24, 1898, then and thereupon you shall deliver to him all the inclosed certificates of stock. If, however, said Trent, or his agent, shall fail to pay to my credit at your bank said sum of $75,000 on or before November 24, 1898, then, and upon such failure, you shall return to me all the inclosed shares and certificates. The time limited for the payment of said $75,000, as aforesaid, is expressly made material to, and of the essence of, the option given by me to said Trent to purchase said shares for said sum, and his option terminates and ceases absolutely at the end of

the time limited above for the payment of said $75,000. In case of payment the buyer is to pay for revenue stamps, and you are authorized to cancel them for me. Dated October 29, 1898. A. G. Campbell." This writing, together with the certificates of stock, remained as deposited until November 24, 1898, when the plaintiff, by his agent, paid to Wells, Fargo & Co. the sum of $75,000. Before the payment was thus made and the stock received, the directors of the Ophir Hill Mining and Concentrating Company declared a dividend, on November 22, 1898, in the total sum of $19,000, and on that day was paid to the defendant. This amount was on deposit with T. R. Jones & Co., bankers, to the credit of said mining company, on October 29, 1898, and remained on deposit until after the dividend was declared. Plaintiff did not know, on November 24, 1898, that the dividend had been declared, and, while he knew on October 29 that there was some money of the mining company's on deposit with T. R. Jones & Co., did not know the amount thereof.

*Messrs. R. B. Shepard, Allen T. Sanford, Harrison O. Shepard, and Roote & Clark* for appellant.

*Messrs. Bennett, Harkness, Howat, Sutherland & Van Cott* for respondent.

HART, District Judge (after stating the facts).—The main question is, who is entitled to the dividends declared and paid, in view of the facts of this case? It is insisted on behalf of plaintiff, Clark, that the so-called "escrow" was a binding agreement upon the defendant, Campbell, before the acceptance of the same by Clark; and that, when the latter did accept the terms of the offer, and made payment on November 24, and the stock was delivered to him, the transaction related back to the delivery of the so-called "escrow" to the

depositary on October 29, and the title should be held to pass as of that date, and thus entitle Clark to the dividends declared subsequently to that date. As there was no withdrawal, or attempted withdrawal, by Campbell, of the offer made in the so-called "escrow" before the same was accepted by Clark, it is not very material to inquire how far the "escrow" was binding upon Campbell prior to the acceptance of the terms by Cark and the payment of the amount required. It may be noted, however, for whatever bearing the same may have in view of subsequent developments, that the instrument deposited was not signed by, nor on behalf of, Clark, and he was not bound to do anything. No money consideration appears to have been given for the writing, nor does there appear to have been any independent contract between the parties as to said "escrow" either binding Campbell to keep the offer to sell open for the time named, or binding Clark to buy the said stock at any time, or at all. Doubtless, bills or notes or stocks, as well as real estate, may be the subject of an escrow agreement. As to the necessity for an actual contract, 1 Devl. Deeds, section 313, says: "Not only are sufficient parties, a proper subject-matter, and a consideration required, but also an actual contract by the parties. In other words, the grantor must have sold and the grantee must have purchased the land; for a proposal to sell or a proposal to buy, although it may be stated in writing, is not sufficient. An actual contract of sale on one side and purchase on the other is just as requisite as the execution of the instrument by the grantor to make it an escrow." Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427; Fitch v. Bunch, 30 Cal. 208; Hoig v. Adrian College, 83 Ill. 267; Stanton v. Miller, 58 N. Y. 197. In the Wisconsin case above cited the court say: "But we have not discovered a single case in which it has been held that one who has deposited a deed of land with a third person with directions to deliver it to the grantee on the happening of a given event, but who has

made no valid executory contract to convey the land, may not revoke the directions to the depositary, and recall the deed, at any time before the conditions of the deposit have been complied with, provided these conditions are such that the title does not pass at once to the grantee upon delivery of the deed to the depositary." If title to the mining stock did not pass to Clark until November 24, 1898, then, according to the well-established rule, Campbell is entitled to the dividend, as being the owner of the stock on the day the dividend was declared. The doctrine is quite fully stated in the case of Wheeler v. Sleigh Co. (C. C.), 39 Fed. 347, as follows: "Stockholders are, as to the property of the corporation, *quasi* partners, holding *per my et per tout*. The earnings of the corporation are part of the corporate property, held by the same tenure; and, until separated from the general mass, the interest of the stockholders therein passes with the transfer of the stock; and this irrespective of the time during which earnings have accrued. By the declaration of a dividend, however, the earnings, to the extent declared, are separated from the general mass of property, and appropriated to the then stockholders, who become creditors of the corporation, for the amount of the dividend. The relationship of the stockholder to the corporation, as to the amount of the dividend, is thus changed from one of partnership ownership to that of creditor. He therefore stands to the corporation in a dual relation—with respect to his stock, as partner and part owner of the corporate property; with respect to the dividend, as creditor upon a par with other creditors of the corporation. The severance of the earnings from the general mass of corporate property, and the promise to pay, arising from the declaration of the dividend, works this change. The earnings represented by the dividend, although the fruit of the general property of the company, are no longer represented by the stock, but become a debt of the company to the individual

who, at the time of the declaration of the dividend, was the owner of the stock. That the dividend is payable at a future date can work no distinction in the right. The debt exists from the time of the declaration of the dividend, although payment is · postponed for the convenience of the company. The right became fixed and absolute by the declaration. This right could, of course, be transferred with the stock by special agreement, but not otherwise. The dividend would not pass as an incident of the stock." Among other authorities sustaining the general rule· that dividends belong to the owner of the stock at the time the same are declared, are the following: 2 Thomp. Corp., secs. 2172-2176; Dow v. Mining Co., 31 Cal. 630, 648; Jones v. Railroad Co., 57 N. Y. 196; Boardman v. Railroad Co., 84 N. Y. 157; Cook, Stock & S., sec. 541; Jermain v. Railroad Co., 91 N. Y. 483; In re Kernochan, 104 N. Y. 618, 11 N. E. 149; Bright v. Lord, 51 Ind. 272, 19 Am. Rep. 732; Hopper v. Sage, 112 N. Y. 532, 20 N. E. 350, 8 Am. St. Rep. 771.

The essential inquiry is, when did the title to the stock pass to Clark? Was it on October 29, when the option and stock were deposited, or was it on November 24, the date of the acceptance, payment, and delivery? Conceding, for the purposes of this case, that the writing deposited was an escrow agreement, binding upon Campbell before acceptance by Clark, still it by no means follows that upon delivery to Clark of the stock on November 24 the sale related back and took effect as of August 29. We are aware of the rule, in certain cases of escrow contracts, to permit the deed to take effect by relation as of the time of the first delivery. The rule is thus stated in Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427: "By all of the authorities, a deed so deposited with a third person to be delivered to the grantee on the happening of some event in the future, which may or may not happen, does not pass title to the land described in it to the grantee until such

event occurs, and then only from that time, or perhaps from the actual delivery of the deed to the grantee after the event has occurred. There may be exceptional cases—as where a man delivers his deed in escrow, and dies before the conditions of the deposit are fulfilled. In such cases it has been said that from necessity, after the conditions are fulfilled, the deed must take effect by relation as of the time of the first delivery." Prutsman v. Baker (Wis.), 11 Am. Rep. 592; Taft v. Taft (Mich.), 26 N. W. 426, 60 Am. Rep. 291. But the facts of the case at bar do not bring it within any of the exceptional cases permitting title to pass as of the first delivery. This case is also distinguishable from cases where there was an absolute agreement of sale and purchase, so as to be a sale in *praesenti*. The cases of Currie v. White, 45 N. Y. 822; Johnson v. Underhill, 52 N. Y. 203, and Phinizy v. Murray, 83 Ga. 747, 10 S. E. 358, 20 Am. St. Rep. 342, are all clearly distinguishable from the case at bar. In so far as the case of Harris v. Stevens, 7 N. H. 454, supports plaintiff's claim to the dividends in question, the same is against the great weight of authority. Under the undisputed evidence in this case, Campbell is entitled to the dividends as a matter of law, and the trial court did not err in so instructing the jury. There was no agreement between the parties as to who should have any dividend declared before the acceptance of the offer to sell, and therefore there was nothing in this connection that should have been submitted to the jury. It was not the case of an attempted, imperfect, or ambiguous agreement as to the right to dividends on the stock sold, and there was nothing to submit to the jury in that connection. It was purely a question of law to award the funds sued for under the undisputed evidence. While there is some complaint that plaintiff was misled, in that he believed that he was buying the bank funds represented by the dividends declared and paid, it must be noted that this is not an action to rescind the contract on the

ground of mistake or fraud. This disposes of many of the errors assigned, and not particularly mentioned above. There being no reversible error in the trial of the case, it is ordered that the judgment be affirmed, at appellant's cost.

*Baskin* and *Bartch, JJ.,* concur.