[No. 8977–1–III. Division Three. June 20, 1989.]

ALFRED LEE FINLEY, *Appellant,* v. JAMES R. CURLEY, ET AL, *Respondents.*

*Thomas Cochran* and *Witherspoon, Kelley, Davenport & Toole,* for appellant.

*Dennis Hession,* for respondents.

SHIELDS, J.—Alfred Lee Finley brought this action against James R. Curley to enforce a stock purchase and

escrow agreement for 50 percent of the common stock of Equipment Service and Parts, Inc. (ESP). He also sought injunctive relief and sanctions against Mr. Curley and ESP for alleged violations of his rights as a shareholder. After trial, the court concluded Mr. Finley had not paid the consideration required by the stock escrow agreement, was not a shareholder, and no shareholder rights existed. Mr. Finley's appeal presents three questions: (1) Did Mr. Curley wrongfully terminate the stock escrow agreement? (2) Was Mr. Finley a shareholder as a matter of law when the alleged violation of his rights as one occurred? (3) Did the court err in excluding certain evidence? We answer no to all three questions and affirm.

The court's findings reflect the following. Mr. Curley hired Mr. Finley in 1969 to work for a Canadian utility vehicle business he managed, Melpaul Utilities Equipment, Ltd., a subsidiary of Paul K. Haggard Co. (Haggard Co.). In 1974, Mr. Curley, Mr. Finley and a third individual purchased equal stock ownership in Melpaul when Haggard Co. terminated the Melpaul operation in Vancouver, British Columbia. Mr. Curley was the president until 1976, when he sold his stock to FINCO, a corporation formed by Mr. Finley to purchase Melpaul's stock. FINCO never acquired nor held any other Melpaul stock. FINCO defaulted on payments for Mr. Curley's stock in 1978, leaving an unpaid balance of approximately $153,000. In 1981, that stock was transferred from FINCO to Mr. Finley personally, without notice to Mr. Curley as required by the FINCO purchase agreement with Mr. Curley. As consideration for the transfer, Melpaul forgave a debt FINCO owed it. Mr. Finley did not personally provide any consideration for the stock.[1]

---

[1] Any of the court's findings related to the FINCO obligation contained in these facts were expressly reserved as having no res judicata, collateral estoppel or law of the case effect. Mr. Finley does not address them in this appeal.

Meanwhile, from 1976 to late 1982, through his reemployment with Haggard Co., Mr. Curley developed favorable business relations with Washington Water Power Co. in Spokane. In 1982, Haggard Co. experienced financial difficulty and Mr. Curley obtained its permission to commence his own utility equipment business in Spokane. Washington Water Power Co. was his main customer. Initially, he operated out of his home under the name of ESP. To maintain a contact concerning the FINCO debt on his Melpaul stock, Mr. Curley contacted Mr. Finley about incorporating and possibly purchasing an interest in ESP. Mr. Finley's contacts with Washington Water Power Co. through Northwest Truck, a Melpaul subsidiary, had not been favorable; consequently, the parties agreed his potential ownership would not be revealed.

In February and March 1983, ESP was incorporated and capitalized at $40,000. Two stock certificates for 2,000 shares each were authorized to be issued to Mr. Curley. Mr. Curley was the sole shareholder, member of the board of directors, officer and manager with a $3,000 monthly salary. ESP entered into a consultant agreement with Mr. Finley. A stock escrow agreement was also executed. The agreement acknowledged Mr. Curley had received "some monies" and was to receive "substantial consideration" from Mr. Finley. In exchange for "future consideration . . . in the form of monies and/or personal property to the said Equipment Services and Parts, Inc., [which] shall equal or exceed the total value of $20,000.00", Mr. Curley was to irrevocably assign and place in trust[2] one of the stock certificates for 2,000 shares

> which at any time, at the sole option and discretion of Alfred Lee Finley, . . . will become the sole property of the said Alfred Lee Finley without the necessity of any

---

[2]The trustee presumably would hold the stock to keep Mr. Finley's status as a shareholder from becoming known to Washington Water Power Co.

further consideration of any nature, kind or description by the said Alfred Lee Finley to James R. Curley and that said stock has been endorsed by the said James R. Curley for the purposes of effecting that transfer.

The trustee, Thomas Milby Smith, was also appointed escrow agent and, in that capacity, instructed:

That it is the intent and design of the parties hereto that all consideration given by either party to the Corporation in exchange for stock will be approved and the values attributed to any person [sic] property agreed to in advance. Therefore, when the said Alfred Lee Finley has provided $20,000.00 or more in monies or property to the Corporation each of the parties hereto will notify the escrow agent, Thomas Milby Smith, in writing that the said consideration has in fact been received. When the escrow agent has been informed that the full $20,000.00 consideration has been received, the escrow agent is thereafter authorized to deliver Certificate No. 2 upon demand.

No time was provided for payment of the consideration. At that meeting, Mr. Finley arranged for Melpaul to issue a check for $2,500 to ESP, recorded on Melpaul's books as an account receivable and subsequently billed to and repaid by ESP. Melpaul also issued a $1,000 check recorded on its books as payment for its attorney fees.

From 1983 to 1986, Mr. Curley managed ESP and financed its operations through credit obtained on his personal guaranties. Mr. Finley had limited contact except to attend board of directors meetings and receive corporate financial statements. In 1983, ESP ordered eight aerial devices through Melpaul which ESP installed on trucks. They were delivered from the manufacturer to, and paid for by, ESP. Another, purchased through Melpaul, required warranty work which ESP did, rather than returning it to the manufacturer. ESP requested reimbursement from the manufacturer through Melpaul. The manufacturer complied, but Melpaul forwarded only one–half to ESP, retaining the balance without advising ESP. Melpaul sold two of its own aerial devices to ESP; one for profit and another, which it had been unable to sell previously, at cost. It also

sold to ESP, on a contract, a truck used as a demonstrator which it had been unable to sell. Later, ESP ordered aerial devices for Melpaul, billing Melpaul only for its costs.

In December 1984, Mr. Smith, as the attorney who had prepared the incorporation documents, notified Mr. Curley the stock certificates, which were not available when the escrow agreement was executed, had been completed and should be signed. On January 3, 1985, Mr. Curley endorsed and assigned one of the certificates to Mr. Finley in care of Mr. Smith.[3]

In October 1986, Mr. Finley and Mr. Curley met and discussed several business arrangements, including the FINCO debt. Mr. Finley took the position he had no legal responsibility to pay that debt, even though he had transferred Mr. Curley's Melpaul stock to himself. The following day, after some discussion concerning possible compromises, Mr. Curley informed Mr. Finley he no longer wanted to be associated with Mr. Finley in any business ventures. In November, Mr. Curley obtained the stock certificate endorsed to Mr. Finley from Mr. Smith as escrow agent, canceled it, and reissued another in his name. Mr. Curley had his attorney notify Mr. Finley by letter of November 20, 1986, the stock escrow agreement was null and void, and terminated the consultant agreement. In response, Mr. Finley notified Mr. Curley he had deposited $20,000 with Mr. Smith as escrow agent and demanded a shareholder meeting. The initial deposit in cash was later withdrawn and replaced with a check, with instructions that it not be cashed.

On February 13, 1987, Mr. Finley brought this action on behalf of himself and derivatively to compel Mr. Curley to reissue the stock certificate and recognize his claimed rights as a shareholder in ESP. He also requested an accounting

---

[3]The assignment authorized the attorney, as attorney in fact, to transfer the shares on the books of ESP. The stock transfer ledger reflects the transfer to Mr. Finley of a stock certificate. The ledger does not reflect a transfer to Mr. Smith, as trustee, as contemplated by the stock purchase provision of the stock escrow agreement.

and judgment for salary increases and bonuses which he alleged Mr. Curley wrongfully declared to himself in shareholder and board of directors meetings during December 1986 and January and February 1987.[4] Mr. Curley answered, affirmatively alleging failure of consideration and laches.

After trial, the court determined Mr. Curley was the sole shareholder and solely responsible for ESP's growth. The court further determined Mr. Finley did not pay $20,000 or more in money or personal property, as required by the stock purchase and escrow agreement, in a timely manner; the equipment sold by Melpaul to ESP during 1983 did not constitute such payment; Mr. Finley's $20,000 tender in 1986 was inadequate in view of the growth of ESP from its inception; and the right to purchase shares in ESP for that amount had terminated. Consequently, Mr. Finley could not bring a derivative suit and Mr. Curley did not violate his rights as a shareholder. Finally, the court found the salaries and bonuses were declared by Mr. Curley in ESP's best interest.

 Mr. Finley assigns error to most of the court's findings. Upon thorough examination of the record we conclude they are supported by the evidence. Consequently, they will not be disturbed on appeal.

Mr. Finley contends the court erroneously disregarded substantial evidence when it found he did not timely pay for the stock. He maintains such payment was made through the cash contributed during the meeting to incorporate ESP and the transfer of equipment by Melpaul at cost during 1983.[5] However, he does not assign error to the

---

[4]On March 6, 1987, Mr. Finley moved for a preliminary injunction restraining Mr. Curley from conducting any more shareholder or board of directors meetings and receiving any further payments from ESP. His motion was granted pending completion of the trial.

[5]We note the escrow instructions reflect provision by Mr. Finley, not Melpaul, of "$20,000.00 or more in monies or property . . ." They further provide for provision of that consideration "to the Corporation", not to Mr. Curley. This is inconsistent with the fact Mr. Curley provided the start–up capital of $40,000,

court's findings (1) the cash contributed was either for payment of Melpaul's attorney fees or was listed by Melpaul as an account receivable, (2) the equipment Melpaul supplied either could not be sold over cost or was sold for a profit, and (3) the equipment ESP ordered through Melpaul never came into Melpaul's possession and could have been obtained by ESP directly from the manufacturers. ESP later provided the same service for Melpaul. No error having been assigned, these findings are verities. *Carkeek v. Seattle,* 53 Wn. App. 277, 281, 766 P.2d 480 (1989). They support the court's determination ESP received no benefit and Mr. Finley suffered no detriment from the transactions and they were therefore not contemplated as payment for the stock. Even if Mr. Finley presented conflicting evidence, this court will not substitute its judgment for that of the trial court. *See Miller v. Badgley,* 51 Wn. App. 285, 290, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988); *Jarrard v. Seifert,* 22 Wn. App. 476, 478, 591 P.2d 809 (1979).

Mr. Finley further maintains he paid for the stock when he tendered $20,000 in December 1986. He asserts Mr. Curley wrongfully terminated the agreement because, without a time for payment provided, notice and demand for performance was first required, after which he should have had additional time to pay.[6] The evidence shows Mr. Finley received actual notice at the October 1986 meeting when Mr. Curley informed him he no longer wanted to be in business with him, and again when he received the termination letter November 20, 1986. Since Mr. Finley

which was fully paid. It would have been consistent if Mr. Curley had only provided $20,000, and Mr. Finley had provided $20,000 as his share of the start–up capital. The minutes of the organizational meeting of March 30, 1983, reflect Mr. Curley was to "provide . . . monies and property . . . of $40,000.00 or more . . . within six (6) months . . ." Having provided the $40,000, Mr. Curley was entitled to the consideration.

[6]We note that this issue was not raised until the motion for reconsideration and no findings were entered concerning it. We note further that the start–up capital was to be provided within 6 months of the date of the agreement. See footnote 5.

responded by tendering the $20,000, he obviously understood Mr. Curley's intent to terminate the agreement. Mr. Finley's argument that a reasonable time for performance was December 1985, almost 3 years after ESP was incorporated, has no merit. The $20,000 initially required was by then inadequate because ESP's value had increased considerably since its inception.

■■ The stock escrow agreement here, without consideration to support it, was essentially a unilateral contract, an offer by Mr. Curley to transfer the stock to Mr. Finley which was revocable if the required performance was not received within a reasonable time. *See Higgins v. Egbert,* 28 Wn.2d 313, 317, 182 P.2d 58 (1947); 12A W. Fletcher, *Private Corporations* § 5567, at 18 (rev. ed. 1984). Since that did not occur here, the escrow failed because the underlying contract never became enforceable. *See Palmer v. Stanwood Land Co.,* 158 Wash. 487, 493, 291 P. 342 (1930); *McLain v. Healy,* 98 Wash. 489, 491–92, 168 P. 1 (1917); *King v. Upper,* 57 Wash. 130, 132–33, 106 P. 612, 106 P. 1135 (1910); *Clark v. Campbell,* 23 Utah 569, 65 P. 496 (1901).

Notwithstanding, Mr. Finley contends the court erred in determining he was not a shareholder as a matter of law. He maintains when Mr. Curley endorsed the stock certificate over to him and a transfer was recorded on the corporate transfer ledger, he became entitled to rights accorded a shareholder of record. RCW 23A.08.250–.290, .500. He further asserts the stock, which was issued as fully paid and nonassessable, could not be canceled, citing RCW 23A.08-.155(4) and ESP's bylaws which permit the corporation

> to treat the holder of record of any share or shares as the absolute owner thereof for all purposes and, accordingly, shall not be bound to recognized any legal, equitable or other claim to, or interest in, such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by law.

Assuming Mr. Finley was entitled to rights attendant to a shareholder of record *as to the corporation,* his status was subject to performance of the stock purchase and escrow agreement *as to Mr. Curley.* When the condition of the escrow was not met and the agreement failed for lack of consideration, Mr. Curley was entitled to reclaim the stock. *See also Malacky v. Scheppler,* 69 Wn.2d 422, 425, 419 P.2d 147 (1966); *Meyer v. Armstrong,* 49 Wn.2d 598, 599, 304 P.2d 710 (1956); RCW 62A.8–105(3)(c), .8–202(4), .8–302(1), (2), .8–315; 28 Am. Jur. 2d *Escrow* §§ 8, 10, at 14, 15 (1966). As a corporate officer, he was also authorized to change the corporate records to reflect that fact. *See Nagel v. Ham, Yearsley & Ryrie,* 88 Wash. 99, 103–04, 152 P. 520 (1915). Neither RCW 23A.08 nor the corporate bylaws prohibit a change in shareholder status. Since Mr. Finley was not a shareholder and had no proprietary interest in ESP when he brought this action, the court was correct in concluding he could not sue derivatively, and no rights "as a shareholder". *Haberman v. WPPSS,* 109 Wn.2d 107, 149, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* \_\_\_ U.S. \_\_\_, 102 L. Ed. 2d 15, 109 S. Ct. 35 (1988); *Bolt v. Hurn,* 40 Wn. App. 54, 58, 696 P.2d 1261, *review denied,* 104 Wn.2d 1012 (1985); CR 23.1.

Finally, Mr. Finley contends the court erred in excluding evidence concerning a settlement offer made by Mr. Curley. The day after the October 1986 meeting, Mr. Curley contacted Mr. Finley and informed him he would exchange his stock in an Iowa joint venture for Mr. Finley's "shares" in ESP. Mr. Curley also offered to forgive the Melpaul debt to wipe the slate clean because he did not want to "have to go through litigation and all the rest of that garbage."

Mr. Curley's statement was an offer of valuable consideration attempting to compromise, in negotiation, a claim which was disputed as to validity or amount. Mr. Finley sought to admit the statements as an implied acknowledgment by Mr. Curley of Mr. Finley's status as a shareholder.

It is not admissible. ER 408. The record establishes that by the time the statement was made a dispute had occurred, with the potential for litigation concerning both the Melpaul stock debt and Mr. Finley's interest in ESP. The court could believe from Mr. Curley's testimony that the offer was made "to buy peace". *See* 5 K. Tegland, Wash. Prac., *Evidence* §§ 134, 135, at 484, 487 (1989); *Knapp v. Hoerner,* 22 Wn. App. 925, 591 P.2d 1276 (1979). *Robinson v. Hill,* 60 Wash. 615, 111 P. 871 (1910), cited by Mr. Finley, is distinguishable. The settlement there was of a prior case and was not an offer between the parties at a time when the dispute in issue was threatened, as here.

The judgment is affirmed.

THOMPSON, C.J., and GREEN, J., concur.