# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DEAN BUCHANAN and SHEILA
MACLANE, husband and wife,

                  Appellants,

        v.

JERRY GRAY and TERESA GRAY,
husband and wife,

                  Respondents.

No. 75150-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 14, 2017

TRICKEY, A.C.J. — Dean Buchanan and Sheila MacLane (together Buchanan) appeal the trial court's order determining that Jerry and Teresa Gray had adversely possessed a disputed piece of land and granting summary judgment. In reaching that decision, the trial court refused to consider Buchanan's evidence of an offer to purchase the disputed land and a permit allowing the Grays to use the disputed area. Buchanan relied on that evidence to argue that the Grays' possession of the disputed area was not hostile.

The trial court excluded the evidence under ER 408, as offers to compromise. We conclude that the offer to purchase and the permit were not offers to compromise because they occurred well before litigation arose and nothing about the Grays' actions suggested they were compromising an ownership right. We also conclude that the evidence raises a genuine issue of material fact whether the Grays' possession of the land was hostile. Thus, we reverse the trial court's grant of summary judgment.

## FACTS

In 1983 or 1984, Jerry and Teresa Gray purchased a parcel of land in Snohomish, Washington. At that time, James Taper owned the property just south of the Gray property. In the 1990s, the Grays built a house on their property and Jerry installed a wire fence along the southern border of their property. At some point, the Grays' fence enclosed land that was within Taper's recorded ownership. Ownership of that land is now disputed and is the subject of this action.

In 2000, the Grays installed an above ground pool within the disputed area. Sometime between 2003 and 2006, the Grays constructed a pond in the disputed area.

In 2007, Taper died. Buchanan purchased Taper's remaining property from Taper's estate.

In 2008, the Grays built a hoop shed within the disputed area.

In 2009, Buchanan conducted a survey of the property and realized that some of the Grays' improvements were within the recorded boundaries of his property.

At the end of 2011, the parties executed a permit (the Permit) that allowed the Grays to continue to use the disputed area through the end of 2012.[1] The Permit required the Grays to indemnify Buchanan for any injuries suffered by any person in the disputed area and "remove any facility" that they had installed on the property at the termination of the Permit.[2] When the Permit expired, the Grays did

---

[1] The Permit is missing exhibit A, which described the property at issue. But the parties do not appear to dispute that the property at issue consisted of the disputed area.
[2] Clerk's Papers (CP) at 142-43.

2

not remove any of their improvements.

In 2013, the Grays offered to purchase the disputed area from Buchanan at least once (the Offer).[3]

In 2014, Buchanan sued the Grays for breach of the Permit, to quiet title to the disputed area, and for ejectment. The Grays filed a counterclaim, alleging that they had acquired title to the disputed area through adverse possession.

Both parties moved for summary judgment. The court granted the Grays' motion for summary judgment. Buchanan moved for reconsideration, which the court denied. In its order denying reconsideration, the court explained that it was excluding evidence of the Permit and the Offer because they were inadmissible offers to compromise.

Buchanan appeals.

## ANALYSIS

### Summary Judgment – Adverse Possession

Buchanan argues that the trial court erred by granting summary judgment in favor of the Grays on their adverse possession claim. He argues that the trial court erroneously excluded evidence that would have raised a genuine issue of material fact whether the Grays' use was hostile. The Grays respond that summary judgment was proper because the trial court properly excluded the Permit and the Offer. We agree with Buchanan.

---

[3] Jerry may also have offered to purchase the property back in 2009 or 2011, or may have offered to purchase the property more than once in 2013. The record, consisting primarily of Jerry's deposition testimony on this point, is not clear. The number of offers and exact timing of the offers does not change our analysis. Therefore, the term "Offer" in this opinion encompasses all the alleged offers.

The trial court should grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The court considers all evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015). The appellate court reviews summary judgment decisions de novo, including related decisions on the admissibility of evidence. Keck, 184 Wn.2d at 368 (citing Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

Here, the Grays moved for summary judgment on their claim of adverse possession. To establish that they had adversely possessed the disputed area, the Grays had to show that, for a period of at least 10 years, their possession of the area was "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). The only element of adverse possession that Buchanan claims the Grays have not proven is hostility.

For a claimant's use of land to be "hostile," the claimant must "'treat the land as his own as against the world throughout the statutory period.'" LeBleu v. Aalgaard, 193 Wn. App. 66, 71, 371 P.3d 76 (2016) (quoting Chaplin v. Sanders, 100 Wn.2d 853, 860-61, 676 P.2d 431 (1984)). Use of land is not hostile when the true owner gives the claimant permission to use the land in that manner. LeBleu, 193 Wn. App. at 72. The claimant's subjective beliefs and intent are irrelevant. LeBleu, 193 Wn. App. at 71 (quoting Chaplin, 100 Wn.2d at 861). But a claimant's statement suggesting that he does not own the property may support an inference that the claimant's use of the disputed property was permissive. See Riley v.

4

Andres, 107 Wn. App. 391, 398, 27 P.3d 618 (2001).

In Riley v. Andres, the Rileys claimed to have adversely possessed a strip of land between their property and the Andres' property for a period of approximately 25 years before the Andres purchased their land. 107 Wn. App. at 394. But, after the Andres' purchase, the Rileys made statements to the Andres' tenants suggesting that the strip of land belonged to the Andres. Riley, 107 Wn. App. at 394-95. Mrs. Riley requested that the tenant "prune and maintain the plants in the disputed area, stating that it was the Andres' land." Riley, 107 Wn. App. at 394. The trial court granted summary judgment to the Rileys on their adverse possession claim. Riley, 107 Wn. App. at 395.

The Court of Appeals reversed. Riley, 107 Wn. App. at 398. The court held that Mrs. Riley's statement "support[ed] an inference that even if the Rileys used the property as they claim, they did so with the [prior owner's] permission." Riley, 107 Wn. App. at 398. Thus, material questions of fact remained and summary judgment was improper. Riley, 107 Wn. App. at 398.

Here, similarly, Buchanan offered evidence that, if admissible, would create a genuine issue of material fact whether the Grays acted as the true owners of the disputed area. Buchanan's evidence consisted of the Permit, which granted the Grays permission to use the disputed area for one year, and the Offer, by which the Grays had offered to purchase the disputed area from Buchanan.

A rational trier of fact might find that offering to purchase the disputed area and executing a document accepting permission from Buchanan to use the disputed area, is proof that the Grays recognized Buchanan as the owner of the

disputed area. That recognition is inconsistent with the Grays' assertion to have acted as true owners of the disputed area against the world.[4] For example, if the Grays were acting as true owners of the land, it would have made more sense to reassure Buchanan that he would not be liable for any injuries occurring in the disputed area because he was not the owner instead of executing an agreement to indemnify Buchanan for any injuries.

As a result, under Riley, summary judgment was improper if the Permit and the Offer were admissible. But the Grays argue that Buchanan should not be able to make any arguments relying on Riley because Buchanan did not cite Riley until the motion for reconsideration.[5] We reject this argument.

A party may generally raise an issue in "a motion for reconsideration when it is closely related to an issue previously raised and no new evidence is required." Snoqualmie Police Ass'n v. City of Snoqualmie, 165 Wn. App. 895, 906, 273 P.3d 983 (2012). Buchanan cited Riley in response to the trial court's oral ruling that the Permit and the Offer were not relevant because they occurred after the Grays had used the land for more than 10 years. In response to the Grays' motion for summary judgment, Buchanan relied on the Permit to negate the element of hostility. Therefore, Riley was closely related to issues already raised. While the

---

[4] The Grays' primary argument against this interpretation of the evidence is that the trial court properly excluded the evidence, which is discussed below. But the Grays also contend that Riley is distinguishable because, here, only Jerry signed the Permit and made an effort to purchase the disputed area. Br. of Resp. at 23. We reject this argument. The Grays have not asserted that Teresa objected to the Permit after Jerry told her about it, and Jerry recounted the Grays' efforts to purchase the property using "we," which implies that this was a joint decision by both spouses. CP at 122-23. A rational trier of fact could infer that Jerry's statements give rise to an inference that both spouses did not treat the disputed area as true owners would.
[5] Br. of Resp'ts at 17, 23-24.

Grays assert that they were not able to develop a record to distinguish <u>Riley</u> because it was not mentioned until the motion for reconsideration, they do not explain how supplementing the record would be useful in this case.

*ER 408*

Buchanan argues that the trial court erred by excluding the Permit and the Offer under ER 408 as offers to compromise. The Grays respond that the Permit and the Offer were offers to compromise because they were attempts "to buy peace."[6] Because the Offer and the execution of the Permit occurred before the dispute over ownership arose, we agree with Buchanan that these were not offers to compromise.

Offers to compromise a claim are not admissible to prove the invalidity of a claim:

> In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

ER 408.

Statements made before the initiation of litigation "are excluded by Rule 408 only if there was an actual dispute at the time and at least some hint of possible litigation." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 408.5, at 62 (6th ed. 2016). As another treatise explains:

> A dispute need not reach the point of threatened litigation for ER 408 to apply. It is sufficient that "an actual dispute or difference of opinion exists" between the parties. However, while litigation need not have

---

[6] Br. of Resp'ts at 22.

> commenced for Rule 408 to apply, there must be some dispute that the parties are attempting to resolve through discussion. "A dispute arises only when a claim is rejected at the initial or some subsequent level." Indicia of an "actual dispute" include the hiring of lawyers, and the threat or filing of a lawsuit.

ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON § 6.04 [1] (5th ed. 2017) (footnotes omitted) (quoting Affiliated Mfrs., Inc. v. ALCOA, 56 F.3d 521, 527 (3d Cir. 1995); S.A. Healey Co. v. Milwaukee Metro. Sewerage, 50 F.3d 476, 480 (7th Cir. 1995)). "A 'claim' under Rule 408 involves the assertion of a right. This is shown both by common usage and by the rule's requirement that the claim be disputed, as one can hardly dispute a claim of which he is unaware." Armstrong v. HRB Royalty, Inc., 392 F. Supp. 2d 1302, 1305 (S.D. Ala. 2005) (footnotes omitted); see State v. O'Connor, 155 Wn.2d 335, 342, 119 P.3d 806 (2005) ("Washington's ER 408 differs from the federal rule only in style").

For example, in Duckworth v. Langland, the parties disputed the creation of a partnership and the right to profits that the partnership received from a development project. 95 Wn. App. 1, 3, 988 P.2d 967 (1998). Before the plaintiff initiated the lawsuit, the defendants sent him a letter that the plaintiff understood was an attempt to purchase his half of the partnership and force him to give up any rights he had to the partnership's profits. Duckworth, 95 Wn. App. at 5-6. The trial court ruled that the letter was inadmissible under ER 408, and the Court of Appeals affirmed on that ground. Duckworth, 95 Wn. App. at 6.

Similarly, in Finley v. Curley, the Court of Appeals affirmed the exclusion of an offer to compromise made before the initiation of litigation. 54 Wn. App. 548, 557, 774 P.2d 542 (1989). There, the defendant had offered an exchange with the plaintiff and offered to forgive a debt owed by the plaintiff in an effort to "wipe the

slate clean because [the defendant] did not want to 'have to go through litigation and all the rest of that garbage.'" Finley, 54 Wn. App. at 557. The court concluded that the offer was made after a dispute had arisen and that the offer was an attempt to "'to buy peace.'" Finley, 54 Wn. App. at 558 (citing 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE §§ 134, 135, at 484, 487 (3d ed. 1989)). The court did not specify when the defendant made the statements about avoiding litigation, but it appears that they accompanied the defendant's offer to the plaintiff. See Finley, 54 Wn. App. at 557-58.

As mentioned above, appellate courts review de novo decisions on the admissibility of evidence made in conjunction with a summary judgment decision. Keck, 184 Wn.2d at 368.

Here, the Grays argue that the dispute arose in 2009, after the completion and recording of the survey. But the Grays' actions do not support that argument.

Jerry executed the Permit two years later, in December 2011. Nothing in the terms of the Permit indicates that, at that time, there was a dispute over the ownership of the disputed area, which is referred to simply as "the Property."[7] As Jerry explained in his deposition, MacLane wanted the parties to execute the Permit because she was worried about liability for any injuries that could occur from use of the pool.

For evidence that the dispute existed by the time the parties executed the Permit, and that the Grays intended the Permit as a compromise of their ownership rights, the Grays rely on Jerry's deposition testimony that he felt "bullied" into

---

[7] CP at 142-43.

9

signing the agreement because he believed MacLane might take his fence down if he did not sign it.[8]

Jerry made the Offer in 2013. For evidence that a dispute existed at that time and that the Offer was an offer to compromise, the Grays rely on Jerry's testimony that, after the 2009 survey "brought to [his] attention" the fact that the pool and several other improvements were in the disputed area, he decided the "easiest way and least expensive way" to handle the situation would be to purchase the disputed area from Buchanan.[9]

While the Grays' evidence makes it clear that they wished to keep using the disputed area at the times Jerry executed the Permit and made the Offer, the evidence does not show that they asserted an ownership interest in the disputed area at any point before the litigation began. The Grays do not cite any evidence suggesting that Buchanan understood the Permit and the Offer as offers to compromise. Nor do the Grays cite any evidence showing that they communicated their belief that the Permit and the Offer were offers to compromise a dispute over ownership or suggesting that Buchanan understood the Permit and the Offer as offers to compromise.

The first time the Grays claimed that they had adversely possessed the disputed area was in their counterclaim, filed in June 2014. It is difficult to see how the Permit and the Offer could be considered offers to compromise a claim that the Grays had not yet asserted. The Grays' actions are more readily understood as attempts to secure a right to use the disputed area, via the Permit, or acquire

---

[8] CP at 124.
[9] CP at 125.

ownership rights, via the Offer.

Accordingly, we conclude that the Permit and the Offer were not offers to compromise, and should not have been excluded under ER 408. Because of this conclusion, we do not reach Buchanan's other arguments against excluding the Permit and the Offer under ER 408.

Since the Permit and the Offer created a genuine issue of material fact whether the Grays' use of the disputed area was hostile, we conclude that summary judgment on the Grays' adverse possession claim was improper.

Buchanan also argues that the trial court erred by granting summary judgment because the Permit and the Offer impeach the Grays' credibility about their use of the disputed area while Taper was the owner. We do not reach this issue because we have already concluded that summary judgment was not appropriate. For the same reason, we also do not reach Buchanan's argument that, "setting aside all of the other evidence in this case," summary judgment was improper because Jerry's assertion that he "attempted to keep the fence in the same straight line"[10] along the boundary, but the effort "failed," did not make it clear at what point the fence deviated from the boundary line.[11]

### Summary Judgment - Enforceability of the Permit

Finally, the parties dispute whether the Permit is enforceable but agree that we do not need to reach that issue. Accordingly, although the Grays devote a substantial portion of their response brief to the issue, to which Buchanan responds in his reply brief, we take no position on the matter.

---

[10] CP at 63.
[11] Appellants' Br. at 21.

11

We reverse the trial court's grant of summary judgment on the Grays' adverse possession claim.

_Trickey, ACJ_

WE CONCUR: