27 P.3d 618 (2001)
107 Wash.App. 391
William M. and Ann RILEY, husband and wife, Respondents,
v.
Thomas and Lenora ANDRES, husband and wife, Appellants.
No. 26280-1-II.
Court of Appeals of Washington, Division 2.
July 20, 2001.
*619 Annette T. Fitzsimmons, University Pl, for Respondents.
Thomas George Krilich, Krilich Laporte West & Lockner, Tacoma, for Appellants.
ARMSTRONG, C.J.
The Rileys and the Andres are neighbors with a common boundary line. The Rileys claim that they adversely possessed part of the Andres' lot while the Andres' predecessors in title, the Gaults, owned it. The Rileys sued and moved for summary judgment. Because the Gaults had both died, the Andres could not show how the Rileys or the Gaults had used the disputed land. As a result, the Andres presented nothing to counter the Rileys' statements as to the Gaults' use of the disputed land. The Andres did challenge the Rileys' credibility, offering statements by Mrs. Riley that the land belonged to the Andres. Nevertheless, the trial court granted summary judgment quieting title in the Rileys. We reverse, holding that the Andres raised an issue of material fact as to the Rileys' credibility sufficient to defeat summary judgment.

FACTS
In 1964, William Riley was an officer of the corporation that originally developed the Oakbrook subdivision. In April 1967, Mr. Riley, as a real estate broker, sold lot 36 of the subdivision to Fremont and Virginia Gault. In March 1968, William and Ann Riley purchased lot 37. The disputed land is a triangular strip of land between the Andres' (lot 36) and Rileys' (lot 37) properties. William and Ann Riley purchased their property in 1967 and built their house and landscaped their yard in 1968. At the time, Fremont and Virginia Gault owned the adjoining lot, which the Andres later purchased. The Gaults had already built a house and landscaped their yard. The Gaults' landscaping extended to a line that was marked by a stake at each end, one near the street and one near the golf fairway that the lots bordered. The Rileys planted several rhododendrons and other bushes, and they installed a sprinkler system in the disputed area. Four of the Rileys' sprinkler heads were in the disputed area: two heads were near the original boundary line and two were near the claimed boundary line. Over time, foliage hid the sprinkler heads. Neither neighbor built a fence because covenants prohibit fences within 30 feet of the fairway.
*620 The stakes that the Rileys believed marked their boundary were not boundary markers. Instead, the stake near the fairway was an out-of-bounds marker for the golf course, and the stake near the street marked the "point of curve" of the street. The out-of-bounds marker is within 1.25 feet of the actual property line, but the point of curve stake is 20 feet from the line.
According to the Rileys, they have maintained the landscaping on the disputed land since 1968, and the Gaults never used the land. The Rileys watered and pruned the plants, spread beauty bark, pulled weeds, and stored wood on the land. Also, their children played there. The Andres presented no evidence to controvert the Rileys' claim, which spanned the period of 1968 to 1993.
The Andres purchased the Gault property in 1993, and they rented the house to the Padgetts until 1998. Shortly before the Padgetts moved in, the Padgetts visited the property and noticed Mrs. Gault's son raking in the disputed area. Periodically, either Mr. Andres or the Padgetts pruned shrubs, raked leaves, and spread beauty bark on the disputed land. Mrs. Padgett transplanted some trees on the strip. A couple of times, Mrs. Riley asked Mrs. Padgett to prune and maintain the plants in the disputed area, stating that it was the Andres' land. Once, Mrs. Riley asked Mrs. Padgett not to prune the rhododendrons too much, as they provided a screen. The Padgetts' children played in the disputed area without objection from the Rileys. In 1997, Mr. Riley piled branches and scrap wood on the disputed land. In late 1997 or early 1998, Mr. Riley hired Mr. Padgett to move sprinkler heads from the disputed area onto Rileys' land. In 1999, Mr. Andres moved the piles of branches and wood to an area of Rileys' lot beyond the disputed strip.
The Rileys sued the Andres to quiet title in the disputed strip, and the trial court granted summary judgment in the Rileys' favor.

ANALYSIS
The Andres contend that they raised issues of material fact relevant to the elements of adverse possession that should have precluded summary judgment. We review a summary judgment de novo, engaging in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Wilson, 98 Wash.2d at 437, 656 P.2d 1030. We construe the facts and all reasonable inferences in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030. And where material facts are particularly within the knowledge of the moving party, courts have been reluctant to grant summary judgment. See Michigan Nat. Bank v. Olson, 44 Wash.App. 898, 905, 723 P.2d 438 (1986). In such cases, "it is advisable that the cause proceed to trial in order that the opponent may be allowed to disprove such facts by cross-examination and by the demeanor of the moving party while testifying." Olson, 44 Wash.App. at 905, 723 P.2d 438 (quoting Felsman v. Kessler, 2 Wash.App. 493, 496-97, 468 P.2d 691 (1970)).
To claim title to property by adverse possession, a party must possess the property for 10 years in a manner that is actual, uninterrupted, open and notorious, exclusive, and hostile. ITT Rayonier, Inc. v. Bell, 112 Wash.2d 754, 757, 774 P.2d 6 (1989); RCW 4.16.020. The adverse possessor must prove each element. ITT Rayonier, 112 Wash.2d at 757, 774 P.2d 6.
The Andres admit that they do not know how the Gaults or the Rileys used the disputed strip before 1993. But they contend the Rileys' evidence does not establish the elements of adverse possession, and they argue that their maintenance of the strip and the Rileys' statements since 1993 contradict the Rileys' claim that they had previously acquired title to the strip by adverse possession.
The Andres first argue that the Rileys did not possess the disputed strip in an open and notorious manner. They argue that the Rileys did nothing to establish possession up to a clearly defined boundary line, such as planting a row of trees, mowing *621 grass up to a line, or building a fence. But adverse possession does not require establishing a clearly demarcated line. Lloyd v. Montecucco, 83 Wash.App. 846, 853-54, 924 P.2d 927 (1996). The court need not find a "blazed or manicured trail" establishing the disputed boundary; rather, the court may project a line between objects where it is reasonable and logical and the claimant's use of the land was open and notorious. Lloyd, 83 Wash.App. at 854, 924 P.2d 927. Neither neighbor built a fence because covenants prohibited fences near the fairway. But the Rileys landscaped and maintained the property up to the point where the Gaults' landscaping began. And the line between the out-of-bounds marker and the point-of-curve marker is a logical boundary, as these stakes marked the line the Rileys and the Gaults seemed to recognize based on their use of the land. Thus, the claimed boundary line is not unreasonably indefinite.
The Andres also contend that the Rileys' landscaping was not open and notorious use. A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it. Anderson v. Hudak, 80 Wash. App. 398, 404-05, 907 P.2d 305 (1995). Planting trees without maintaining or cultivating them is not open and notorious use. Anderson, 80 Wash.App. at 405, 907 P.2d 305. But, according to the Rileys, they did more than plant trees and shrubs. After planting several rhododendrons and other bushes in 1968, the Rileys maintained the landscaping on the strip, at least until 1993. They watered and pruned the plants, spread beauty bark, and pulled weeds. And a party who claims by adverse possession must show that its use is that of a true owner, given the lands' nature and location. Chaplin v. Sanders, 100 Wash.2d 853, 863, 676 P.2d 431 (1984). Here, landscaping was the typical use for land of this character.
Even if the Rileys used the disputed strip in an open and notorious manner, the Andres claim that the use was not hostile. The hostility element requires simply "that the claimant treat the land as his own against the world throughout the statutory period." Chaplin, 100 Wash.2d at 860-61, 676 P.2d 431. Thus, only the claimant's treatment of the land is relevant, not his subjective belief about his true interest in the land. Chaplin, 100 Wash.2d at 861, 676 P.2d 431. Because of this, the Rileys argue that Mrs. Riley's statements that the property belonged to the Andres are irrelevant. And, according to the Rileys, hiring Mr. Padgett to move sprinkler heads and the Padgetts' use of the property are also irrelevant because, by the time of these events, the Rileys had already adversely possessed the land. We disagree.
Although the Rileys' subjective belief as to who owned the property is not relevant to their claim, the statement that they did not own the property bears on their credibility. To adversely possess the property, the Rileys had to use it as an owner would have used it. Chaplin, 100 Wash.2d at 863, 676 P.2d 431. The Rileys have stated facts sufficient to establish such use. But their claim to have acquired title by using the property as an owner is inconsistent with Mrs. Riley's statement that the property was not theirs. Further, we agree with the Andres that their use of the property, the Padgetts' use of the property, and that Mr. Riley hired Mr. Padgett to move sprinkler heads from the disputed property tend to impeach the Rileys' claim. Because, when reviewing a summary judgment, we draw all inferences in favor of the nonmoving party, these facts preclude summary judgment. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
Construing the facts and inferences in the Andres' favor, there is doubt about whether the Rileys used the property as they claim and, if they did, whether they did so without permission. A rational trier of fact might view this impeachment of the Rileys' credibility as supporting a conclusion that the Rileys did not actually use the property as they claim. And where, as here, the material facts are based solely upon the moving party's affidavits, credibility is especially important. In such a case, the nonmoving party should have the opportunity to expose the moving party's demeanor while testifying at *622 trial. Olson, 44 Wash.App. at 905, 723 P.2d 438.
Finally, the Rileys' adverse possession claim fails if they used the property with the true owners' (the Gaults) permission. Chaplin, 100 Wash.2d at 861-62, 676 P.2d 431. Mrs. Riley's admission that the property was not theirs supports an inference that even if the Rileys used the property as they claim, they did so with the Gaults' permission.
In conclusion, the Andres presented sufficient impeaching evidence to raise material issues of fact as to the elements of the Rileys' adverse possession claim.
Reversed and remanded for trial.
HUNT and QUINN-BRINTNALL, JJ., concur.