IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL POPELIER and BERNADETTE POPELIER, husband and wife, | ) ) ) ) | No. 32090-1-III |
| Respondents, | ) ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| CAROL SAMSE, a single person, | ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Carol Samse appeals the trial court's determination that

Michael and Bernadette Popelier adversely possessed a small portion of her property

adjacent to the Popeliers' access easement to their property. Substantial evidence supports

the trial court's findings which in turn support adverse possession. We therefore affirm.

FACTS

Before 1979, the properties now owned by Ms. Samse and the Popeliers were a

single parcel. In 1979, the Grasshopper Short Plat was recorded and resulted in several

lots, including the lots that are the subject of this dispute: lot 1, now owned by Ms. Samse

(the Samse lot), and lot 2, now owned by the Popeliers (the Popelier lot). In 1981, a

recorded triangular 50' x50' x50' access easement allowed ingress and egress access from Nickels Road over the Samse lot to the Popelier lot. The Popeliers' predecessor in interest, Frank Buell, built a flat-topped rock wall that he used as a ramp for loading cattle directly east of that easement on a portion of the Samse lot.

The Popeliers purchased their lot in 1987. Ms. Samse purchased her lot in 2005. In 2007 or 2008, the Popeliers excavated the access easement area to extend and flatten it. The Popeliers also constructed a fence made of fiberglass poles and electric wires around the area after a fire in 2009. Soon after, Ms. Samse hired NCW Surveying to survey and stake the true boundaries on her property and confirmed that the Popeliers' new fence was located on her lot. In October 2009, Ms. Samse hired legal counsel. Ms. Samse's attorney sent the Popeliers a letter asserting Ms. Samse's right and title to the boundary line and the property outside the access easement. In November 2010, Ms. Samse directed her nephew to remove the electric fence the Popeliers had constructed. In 2012, Ms. Samse installed a fence along the access easement which cut off the Popeliers' access to the loading ramp.

In June 2012, the Popeliers filed this action claiming trespass, disputed boundary line, quiet title, and adverse possession of the area adjacent to the access easement. This action proceeded to a bench trial on August 29-30, 2013. At trial, the Popeliers testified

2

that a fence existed beyond the access easement when they moved to the property. Mr. Popelier also testified that his predecessor in interest, Mr. Buell, told him that this fence constituted the boundary line. Ms. Samse objected to the admission of Mr. Buell's statements as hearsay. The trial court admitted Mr. Buell's out-of-court statements under ER 803(a)(14). On cross-examination, when shown pictures of the access easement area taken prior to 1991 and after 1999, Mr. Popelier could not locate the fence.

Neighboring property owner John Goss, who moved to Nickels Road in 1995, testified there was only a piece of barbed wire lying on the ground in the access easement area when he moved in and that there was no standing fence. Thomas Thompson, Ms. Samse's predecessor in interest who lived on lot 1 from 1998 to 2005, testified there was never a fence in the area near the access easement. Ms. Samse similarly testified that the first time she saw a fence in the access easement area was in 2009 when Mr. Popelier installed the fiberglass poles and electric wires.

The Popeliers testified they used the rock wall Mr. Buell had installed as a loading dock from time to time and regularly used the flat area on top to park their cars, trucks, equipment, tractors, and boats during the 25 years that they owned their lot. Additionally, they stated they continuously maintained the area and improved the fence lines but never made any changes to the loading ramp area or moved any of the fences. Mr. Popelier

3

testified he maintained the area near the claimed fence by using a weed trimmer and applying herbicides along the fence line to keep the weeds and brush down. Ms. Popelier also testified that their use of the loading ramp as a parking area was obvious to all the owners of the Samse lot because the use was in direct view of the front living room window of the home on the lot.

Mr. Goss, who passed by the access easement frequently from 2002 until the time of trial, testified that the Popeliers infrequently parked their cars end-to-end in the access easement area when they were watering their yard. Mr. Thompson testified that he did not see the Popeliers park their vehicles outside of the access easement.

The court issued a memorandum opinion on September 25, 2013, finding that the Popeliers prevailed on the adverse possession claim as to the area adjacent to the access easement, but deciding against the Popeliers as to their claims for disputed boundary line, trespass, and quiet title. The court stated, "The Court is left to determine rights with regard to the fence/boundary lines and the increased size of the access easement." Clerk's Papers (CP) at 49. The court noted, "[T]he only difficulty is in accurately describing" the adversely possessed area and that "[n]o testimony established an exact increase in the size" of the access easement area. CP at 55, 52. However, the court found that the area was marked with a yellow bucket and two different fence posts.

4

On October 7, 2013, Ms. Samse filed a motion for reconsideration of the memorandum opinion. The trial court heard argument on the motion on October 21 and denied the motion in an order filed November 18, 2013. The court asked that the parties meet on the property to settle the boundary line. As guidance, the court stated that the boundary line should run from Nickels Road to Ms. Samse's fence, intersecting the yellow bucket. The court also stated the line could be readily determined, but in the event that the parties could not come to an agreement on the exact location of the boundary line, the court would go to the property and decide the line for the parties. Finally, the court stated it would wait to sign a final order until a decision was made.

On October 29, 2013, a week after the motion for reconsideration was heard, Ms. Samse's attorney sent a letter to the trial court judge along with a proposed order containing findings and conclusions from the reconsideration hearing. In the letter, counsel for Ms. Samse identified the alternatives to solving the boundary description issue, stating,

> Counsel for the parties will meet at the property and attempt to establish the area you ordered was adversely possessed as set forth in the enclosed Order. You stated to counsel at the presentment hearing that, if necessary, you will visit the property in order to outline the area that you determined was adversely possessed by Plaintiffs. In the event the parties are unable to determine or agree to the area set forth in the Order, this letter will confirm that you have schedued [sic] to visit the property on Friday, December 20, 2013 at 2:00 p.m.

CP at 24.

The court entered findings of fact, conclusions of law, and an order on November 8, 2013. The court concluded, "Using Exhibit 6 and 19, the area adversely possessed by Plaintiffs runs in a line starting on the northerly fence line of Defendant's property that would intersect the yellow bucket and white post noted in Exhibit 10 and end at Nickels Road." CP at 22. The court stated that the Popeliers were entitled to this area adjacent to the preestablished easement and used the language from the above conclusion to describe the property line.

On November 14, the parties met at the property but could not decide on a boundary description. Ms. Samse filed a notice of appeal on November 19, 2013. The Popeliers responded that the November 8, 2013 order was not a final, appealable order because the trial court still needed to conduct a site visit and obtain a legal description of the adversely possessed area.

On December 17, the court sent a letter to the parties stating that it would be visiting the property on December 20. On December 18, counsel for Ms. Samse sent a letter to the trial court stating that Ms. Samse was not ordered to appear at the proposed site visit and would not attend. On December 20, 2013 at 2:00 p.m., the trial court judge held the site visit with his bailiff, the Popeliers, the Popeliers' counsel, and a licensed

6

surveyor present. No one appeared on behalf of Ms. Samse. The surveyor had previously appeared at trial on behalf of Ms. Samse. The court gave the surveyor the boundary line points established in the findings and conclusions, and the surveyor provided a legal description.

On February 21, 2014, the Popeliers presented the final judgment and decree as directed by the trial court. Ms. Samse objected, arguing the trial court acted improperly by having ex parte communications with the Popeliers at the site visit. The trial court rejected the argument, explaining that Ms. Samse was invited to participate in the visit and declined. The trial court signed the judgment with the surveyor's legal description and stated the decision was final. The "Judgment and Decree Quieting Title and Changing Boundaries" includes the following legal description:

> BEGINNING AT A POINT ON THE NORTHERLY BOUNDARY LINE OF OKANOGAN COUNTY ROAD NO. 1974 LYING 50 FEET NORTHEASTERLY OF THE WEST BOUNDARY LINE OF LOT 1 OF GRASSHOPPER SHORT PLAT, AS PER PLAT THEREOF RECORDED IN BOOK 'B' OF SURVEYS, PAGE 142, UNDER OKANOGAN COUNTY AUDITOR'S FILE NUMBER 655927:
>
> THENCE NORTHWESTERLY TO THE POINT OF INTERSECTION WITH THE WEST BOUNDARY LINE OF LOT 1 OF SAID GRASSHOPPER SHORT PLAT, SAID POINT OF INTERSECTION BEING 50.00 FEET NORTH OF THE NORTHERLY BOUNDARY LINE OF OKANOGAN COUNTY ROAD NO. 1974;

THENCE NORTH ALONG THE WEST BOUNDARY LINE OF SAID LOT 1 FOR A DISTANCE OF 2.99 FEET;

THENCE EASTERLY TO THE NORTHERLY BOUNDARY LINE OF THE OKANOGAN COUNTY ROAD NO. 1974 TO A POINT WHICH LIES 61.09 FEET NORTHEASTERLY OF THE POINT OF BEGINNING;

THENCE SOUTHWESTERLY ALONG THE NORTHERLY BOUNDARY LINE OF OKANOGAN COUNTY ROAD NO. 1974 FOR A DISTANCE OF 61.09 FEET TO THE TRUE POINT OF BEGINNING.

CP at 500-01.

Ms. Samse filed a motion with this court to exclude any evidence taken at the site visit and survey of the area of adverse possession and also any subsequent order of the trial court confirming the survey. On May 21, 2014, a commissioner of this court ruled that the November 8, 2013 order was not final or appealable and denied Ms. Samse's motion to restrict the appellate record. On June 20, 2014, Ms. Samse filed a motion to modify the commissioner's ruling, and this court denied the motion on September 12, 2014.

Ms. Samse appeals both the trial court's findings of fact, conclusions of law, and order from November 8, 2013 and the trial court's order denying the motion for reconsideration from November 18, 2013. She contends (1) the trial court erred by finding the Popeliers established adverse possession of the area adjacent to the access

8

easement, (2) the trial court erred in relying on inadmissible hearsay evidence to find that the Popeliers adversely possessed the same, and (3) the trial court erred in not awarding her attorney fees and costs because she was the substantially prevailing party and this court should award her attorney fees and costs on appeal under RCW 7.28.083(3).

## ANALYSIS

"Adverse possession is a mixed question of law and fact: whether the essential facts exist is for the trier of fact, but whether the facts constitute adverse possession is for the court to determine as a matter of law." *Lloyd v. Montecucco*, 83 Wn. App. 846, 853, 924 P.2d 927 (1996). Questions of law receive de novo review. *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 210, 936 P.2d 1163 (1997).

This court reviews a trial court's challenged findings for substantial evidence, which is "evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *Id.* "The substantial evidence standard is deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing party." *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006). The reviewing court must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). Unchallenged

findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

1. *Whether the trial court erred in finding that the Popeliers adversely possessed the bench-like area adjacent to the access easement*

The principal focus of Ms. Samse's arguments is a piece of property, sometimes described in the record as a bench-like area, adjacent to the access easement that the trial court held the Popeliers adversely possessed. Ms. Samse argues that the Popeliers produced insufficient evidence that their use of this property was (1) uninterrupted and (2) open and notorious. Ms. Samse also contends the Popeliers produced insufficient evidence to support the trial court's determination of the boundary of this property.

To prevail on a claim of adverse possession, the claimant must show that possession is "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). "Such possession must continue for a period of 10 years." *Bryant*, 86 Wn. App. at 209-10. The holder of legal title is presumed to have possession, so the burden is on the claimant to prove each element of adverse possession. *ITT Rayonier*, 112 Wn.2d at 757. The party claiming adverse possession must prove each element by a preponderance of the evidence to prevail. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010).

On appeal, Ms. Samse only challenges the first two elements of adverse possession.

Actual and Uninterrupted Possession

First, Ms. Samse argues that at most the Popeliers used the area adjacent to the access easement sporadically. Thus, she contends, the evidence is insufficient to prove uninterrupted possession of the area for 10 years.

In order to establish actual and uninterrupted use of the property throughout the statutory 10-year period, a claimant must demonstrate the same type of use that a true owner would make of the property, considering its nature, character, location, and ordinary uses. *Bryant*, 86 Wn. App. at 210.

Here, the trial court found that "[v]irtually all" of the Popeliers' witnesses established that the Popeliers used the area in question for parking one or more vehicles. CP at 20. The court determined that these acts were regular and uninterrupted and go as far back as 1987 when the Popeliers first bought their property. Testimony elicited at trial revealed that the Popeliers used the rock wall as a loading dock from time to time and regularly used the flat area on top to park their cars, trucks, equipment, tractors, and boats. Additionally, the Popeliers stated they have continuously maintained the area and improved the fence lines. Mr. Popelier testified he maintained the area near the fence by

11

using a weed trimmer and applying herbicides along the fence line to keep the weeds and brush down.

The trial court also emphasized the fact that the rock wall had been on the property at least since 1995 when Mr. Goss purchased his property just west of the Popeliers. The court found the rock wall "is clearly visible, not natural, and definitely contrary to the interests of [Ms. Samse's] property upon which it is located." CP at 19. The flat area above the wall is where the Popeliers testified they have parked cars and other equipment since they moved to the property. Additionally, Mr. Thompson testified that the area near the easement had not changed during the time he owned lot 1 from 1998 to 2005. Thus, in its memorandum opinion the court stated, "With Mr. Thompson's testimony about no particular change in the area from the time of his purchase and evidence about Mr. Buell creating the rock wall during the period of his ownership, the Court finds the increased area was adversely possessed for over twenty (20) years." CP at 54.

Ms. Samse relies on numerous authorities to support her contention that the Popeliers' use was not continuous. These authorities are all distinguishable because in each case the trial record did not support a finding of continuous use. Here, virtually all of the Popeliers' witnesses supported their position that they regularly parked vehicles in the bench-like area adjacent to the easement. Ms. Samse fails to cite any analogous case

where courts have held that uses similar to the Popeliers' did not satisfy the continuous and uninterrupted use requirements. Additionally, because the property in question was a bench-like area above a rock wall, the Popeliers' use of the property for parking vehicles and other equipment is of the same character as a true owner might make of the property considering its nature and location. We conclude that substantial evidence supports the trial court's finding that the Popeliers' use of the bench-like area adjacent to the access easement was actual and uninterrupted.

Open and Notorious Use

Second, Ms. Samse contends that the Popeliers did not satisfy the open and notorious element of adverse possession where (1) the Popeliers' use of the property was insufficient to put her on notice of the adverse possession, (2) the area claimed by adverse possession lacked well-defined boundaries, and (3) the boundary line established by the court improperly includes more property than just the bench-like area above the rock wall.

The open and notorious element is satisfied if (1) the titleholder of the property has actual notice of another party's adverse use throughout the 10-year statutory period, or (2) the titleholder is deemed to have constructive notice because the claimant used the property such that any reasonable person would have thought he owned it. *Chaplin v. Sanders*, 100 Wn.2d 853, 862, 676 P.2d 431 (1984). Again, the court must consider the

13

nature of the land when deciding whether the record owner had actual or constructive notice. *Id.* at 862-63.

Here, the Popeliers testified and the trial court found that their use of the bench-like area was obvious to Ms. Samse and her predecessor in interest because their parked vehicles could be clearly seen from Ms. Samse's front window. This testimony was unrefuted and supports the trial court's finding that the Popeliers' use was open and notorious.

Ms. Samse next argues that the Popeliers were required to prove the boundaries were well defined. The trial court found, "No testimony established the exact increase in the size of the access easement area," and thus it "is difficult to accurately describe the area around the access easement that Plaintiffs adversely possessed." CP at 19-20. Ms. Samse contends that this finding precludes the trial court from concluding that the Popeliers proved adverse possession.

However, "[a] boundary may be defined by the use of the property itself, by a natural feature, or by a fence." *Bryant*, 86 Wn. App. at 212 (footnotes omitted). "Adverse possession does not require establishing a clearly demarcated line." *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001). Instead, "the court may project a

14

line between objects where it is reasonable and logical and the claimant's use of the land was open and notorious." *Id.*

Here, the Popeliers testified regarding the approximate area and configurations in which they parked their vehicles. This testimony, aided by numerous photographs, allowed the trial court to approximate the area of actual and continuous use.

Third, Ms. Samse contends the boundary line established by the court improperly includes more property than just the bench-like area above the rock wall. Ms. Samse cites *Lloyd v. Montecucco*, in which Division Two of this court upheld the trial court's boundary line where the adversely possessed area was located between a steep bank and wooded area that did not permit a fence or other clear demarcation. 83 Wn. App. at 853-54. Ms. Samse argues that the facts of *Lloyd* are distinguishable from this case and, thus, this court should determine that the trial court's demarcation was improper. Ms. Samse states in her briefing, "Unlike *Lloyd*, there is no uncontroverted evidence that the Popeliers used the entire area between the yellow bucket and the posts to park vehicles." Br. of Appellant at 25. However, Ms. Samse misstates the *Lloyd* court's conclusion. The *Lloyd* court specifically stated, "[T]here is no direct evidence [that] the [claimants] actually possessed every square yard of the disputed track," yet concluded, "nonetheless . . . the trial court's demarcation was proper." *Id.* at 853. The *Lloyd* court then stated, "Courts

15

may create a penumbra of ground around areas actually possessed when reasonably necessary to carry out the objective of settling boundary disputes." *Id.* at 853-54.

Thus, the *Lloyd* court's analysis actually contradicts Ms. Samse's argument. Even if this court agreed with Ms. Samse that the Popeliers did not use every square foot of the property included in the new land description, *Lloyd*'s penumbra analysis supports upholding the trial court's demarcation. The line determined by the trial court is based on objects shown in the photographs that were entered into evidence and generally conforms to the testimony regarding the area where the Popeliers parked their vehicles. This area includes the rock wall, which the court properly used to create a logical configuration of the land adversely possessed up to the access easement.

We conclude substantial evidence supports the trial court's findings that the Popeliers adversely possessed the area described in the judgment.

2.    *Whether the trial court erred in relying on inadmissible hearsay evidence to find that the Popeliers adversely possessed the bench-like area*

Ms. Samse argues that the trial court erred in admitting Mr. Popelier's testimony concerning what his predecessor in interest, Mr. Buell, described as the boundary between the two lots. She argues that this error was prejudicial because the trial court relied on the testimony to find a fence once existed around the access easement area and to determine

16

the boundary of the adversely possessed area in the absence of any other evidence concerning the disputed boundary.

Mr. Popelier testified that a fence enclosed the area adjacent to the access easement when he and his wife moved to the property. Mr. Popelier also testified that he was told by Mr. Buell that the fence around the access easement area constituted the boundary between the two lots. Ms. Samse objected to these statements. The court overruled the objection and admitted Mr. Buell's out-of-court statements under ER 803(a)(14).

This court reviews admission of evidence under a hearsay exception for abuse of discretion. *Brundridge v. Fluor Fed. Servs.*, 164 Wn.2d 432, 450, 191 P.3d 879 (2008). A trial court abuses its discretion when it takes a view that no reasonable person would take. *Id.* Evidentiary error is grounds for reversal where it results in prejudice. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). An error is prejudicial if it is reasonably probable that had the error not occurred, the outcome of the trial would have been materially affected. *Id.* (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

It is undisputed that Mr. Popelier's testimony regarding Mr. Buell's statements is hearsay. ER 803(a)(14) provides a hearsay exception only for *records of documents*

affecting an interest in property. Mr. Buell's statements to Mr. Popelier were not a record of a document. The trial court thus abused its discretion in admitting the testimony.

However, this error did not prejudice Ms. Samse because the trial court did not rely on the hearsay evidence in reaching its conclusion that the Popeliers had adversely possessed the bench-like area. We note that the court's findings and conclusions on the adverse possession claim do not focus on any of the evidence related to the fence, which may or may not have existed around the access easement area at various times during the Popeliers' ownership of their lot. Instead, the trial court's analysis focuses on the photographic evidence and the testimony of the Popeliers' other witnesses. Specifically, finding 16 states, "Virtually all of [the Popeliers'] witnesses established that [the Popeliers] used the area regularly for parking one or more vehicles," and findings 25 and 26 describe a bucket and posts that coincide with witnesses' descriptions of the area of adverse possession. CP at 20-21.

We conclude that while the trial court abused its discretion in admitting the hearsay statements of Mr. Buell, this error was not prejudicial because numerous witnesses testified to the approximate area where the Popeliers parked their vehicles for over 20 years.

18

3.    *Whether the trial court erred in not awarding Ms. Samse attorney fees*

Ms. Samse argues that the trial court erred in not awarding her attorney fees and

costs because she was the substantially prevailing party. She also seeks an award of

attorney fees on appeal. Ms. Samse bases her claims for attorney fees on

RCW 7.28.083(3).

RCW 7.28.083(3) entitles the prevailing party to reasonable attorney fees and

costs in an action asserting title to real property by adverse possession. Nevertheless,

RCW 7.28.083 applies only to actions filed on or after July 1, 2012. LAWS OF 2011, ch.

255, § 2. The Popeliers filed suit asserting title to Ms. Samse's property on June 19,

2012. Thus, this statute does not apply to this controversy.

4.    *Whether the Popeliers are entitled to attorney fees*

The Popeliers request attorney fees on appeal under CR 11, RAP 18.1, RAP 18.9,

and RCW 4.84.185. They contend that Ms. Samse's appeal was frivolous because it

presents no debatable issues. An appeal is frivolous if it is devoid of merit so that no

reasonable possibility of reversal exists. *Alexander v. Sanford*, 181 Wn. App. 135, 184-

85, 325 P.3d 341 (quoting *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 145 Wn. App. 765,

780, 189 P.3d 195 (2008)), *review granted*, 339 P.3d 634 (2014). "An action must be

frivolous in its entirety." *Ahmad v. Town of Springdale*, 178 Wn. App. 333, 344, 314

19

No. 32090-1-III
*Popelier v. Samse*

P.3d 729 (2013), *review granted by Iman v. Town of Springdale*, 180 Wn.2d 1013, 327 P.3d 55 (2014).

Considering all the evidence, we determine that Ms. Samse's appeal was not frivolous in its entirety. Ms. Samse was correct that the trial court abused its discretion in admitting the hearsay discussion between Mr. Popelier and Mr. Buell, and she presented a debatable argument regarding whether such error was prejudicial. Thus, Ms. Samse's appeal is not devoid of merit in its entirety. We deny the Popeliers' request for attorney fees on appeal.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.