IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KIM DAVID and JAMES SHIVE, a married couple,<br><br>          Respondents,<br><br>v.<br><br>LANGDY HIAN and TIM HIAN, a married couple,<br><br>          Appellants. | No. 86722-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Tim and Langdy Hian challenge the trial court's determination that their neighbors, Kim David and James Shive, adversely possessed a section of their property, as well as the subsequent orders quieting title and awarding attorney fees in favor of David and Shive. The Hians failed to produce specific facts to rebut the contentions put forth by David and Shive on summary judgment. We affirm.

FACTS

Kim David and James Shive purchased property in Everett, Washington in 1997. From 1968 to 2016, Winston Leigh owned the neighboring property. Leigh sold the property to Tim and Langdy Hian in 2016.

David and Shive's property is south of the western part of the Hian property. The dispute between the parties pertains to a triangular piece of land originally belonging to the parcel of land purchased by the Hians.

When David and Shive purchased the property, the lawn to the north and east of

the house extended north to a boundary created by bushes and thickets. A prior owner of David and Shive's property had planted rhododendrons on the western side of the lawn area. According to David, the previous owner told her that "the northern boundary of the property extended from the northwest corner of the property of our neighbor to the west, marked by a fence, across and along the thickets bordering the lawn and rhododendrons, to a rock on the western boundary of the property." For the entirety of the time they owned the property, David and Shive maintained the lawn and rhododendrons. Shive mowed the lawn all the way to the border with the thicket to the north. David regularly trimmed back blackberry bushes and other plants that encroached on the lawn from the thicket.

In the spring of 2021, the Hians removed a number of trees from their property. David and Shive were concerned about the loss of privacy and placed pots of bamboo plants at the northern edge of their property. The Hians objected to the bamboo and discussed with David and Shive where the bamboo should be planted, whether to build a partial fence, and where to place a fence. The parties disagreed as to the location of the boundary between the properties and installation of a fence. David and Shive opposed construction of a fence. The parties discussed different options, including placing fence posts at either end of the property line and a partial fence, but could not agree.

In May 2021, the Hians installed a post at the east end of the property line and asked Shive to verify the placement of a post hole at the west end of the property line. Shive responded "[l]ooks ok," and the Hians responded that they would install the post the next day. David and Shive were both present when Tim began installing the new

post.  David became concerned because Tim "was pounding things" by the roots of a very large tree next to her home.  David "lost [her] cool" and screamed at Tim to be careful.  Shive observed that Tim appeared angry.  The Hians then said they were going to install a fence.

Between May 15 and May 21, 2021, the Hians installed a chain link fence along the line they believed to be the property line.  David and Shive did not object.  Subsequently, the Hians removed the vegetation north of the fence, including the rhododendrons.

In June 2021, the Hians received a letter from a law firm retained by David and Shive that demanded the Hians cease and desist from any further action in the disputed area until the parties could resolve the boundary dispute.  The letter asserted that David and Shive had gardened, maintained, and used the disputed area for recreation since moving to the property in 1997 which established sufficient facts to prove adverse possession.  The letter concluded by stating that David and Shive hoped to reach a resolution without resorting to litigation.  The Hians responded that they disputed the claims and believed the criteria for adverse possession were not met.

Subsequently, David and Shive filed a lawsuit against the Hians alleging adverse possession of the disputed property, or in the alternative, mutual recognition and acquiescence.  They also asserted a cause of action for timber trespass for removal of the vegetation in the disputed area.

In an attempt to settle the dispute, David and Shive offered to dismiss their claims and "agree on a boundary line ceding all claims to ownership of the disputed area" to the Hians in exchange for "an unlimited easement for access."  The Hians

would also be required to remove the existing chain link fence and David and Shive would install a new wooden fence on the border between the disputed area and the Hians' property.  The Hians declined the offer and did not present a counteroffer.

The parties both filed motions for summary judgment.  The motion filed by David and Shive requested an order and decree quieting title to the disputed property and an award of damages and fees for trespass and destruction of the rhododendrons.  In a declaration in support of the motion, Shive stated before April 2021, "the bushes and thickets to the north of our lawn and rhododendrons served as the boundary between the two properties."  David and Shive had never asked or received permission to enter or use the property.  They had maintained the lawn and rhododendrons.  Shive mowed the lawn up to the border with the thicket, and David trimmed back any encroaching blackberry bushes and hung birdfeeders in the area.  Their son played and invited guests spent time on the lawn.  In contrast, Shive stated that he "rarely, if ever, saw [his] neighbors to the north enter into the lawn to the south of the thicket."  Specifically, he had never seen Leigh "step foot on the lawn or among the rhododendrons to the south of the thicket" while he owned the property between 1997 and 2016.

David and Shive also submitted sworn declarations from three acquaintances who provided their observations of the disputed property beginning in 1997.  Suzanne Cowper stated she knew David and Shive when they first purchased the property, and visited there every four to six weeks and often toured the garden and yard.  She noted "a well-kept grassy area" up to the blackberry bushes at the northern border of the lawn.  According to Cowper, "I believed that the lawn and the rhododendrons were a part of Kim David and Jim Shive's property."  Another friend provided similar observations from

4

her two to three yearly visits since 1998. Shive's daughter, who visited regularly and lived at the home for a few months in 2012, stated that during her time at the home, "the yard of the house included a broad, well-maintained lawn, as well as a raised garden, neatly tended rhododendron bushes, and a couple of large trees. The yard was bordered to the north by a thicket of blackberry bushes and other plants." She too "believed that the lawn and the rhododendrons to be a part of Kim David and Jim Shive's property." She also noted that the new fence was on land that she thought belonged to David and Shive and it "blocked off the ability to run around the property that the children in my family had previously enjoyed."

The Hians filed a motion for partial summary judgment, seeking dismissal of the adverse possession claim. They claimed that David and Shive had not exercised exclusive or open and notorious possession of the disputed area. To demonstrate that David and Shive had not exercised exclusive possession of the disputed property, the Hians cited two occasions in which they or their predecessor was aware of David and Shive's use of the property—the dumping of grass clippings and the placement of the bamboo pots. As evidence of the first instance, the Hians provided a notarized letter from Leigh about his interaction with Shive after Leigh discovered that someone had dumped grass clippings on his property and placed no trespassing signs on his property. Leigh stated:

> I never told him directly not to trespass but when I saw that lawn clippings had been dumped on my property I put a no trespassing sign in that area. Jim saw it and shortly thereafter called to me and said he did it because there was evidence lawn clippings had been dumped there before. He said he wouldn't do it again and as far as I know it didn't happen again. I did walk in that area several times a year. For the entire time that I lived at this home, there was no evidence that the neighbor used my property.

The Hians also described their disagreement about the property line and subsequent installation of the fence to which David and Shive did not object until weeks after completion.

As to their claim that David and Shive had not exercised open or notorious possession of the disputed area, the Hians noted that they had no knowledge that David and Shive used the property until placement of the bamboo pots. Similarly, Leigh had no notice of their usage until he found the grass clippings dumped on his property. According to the Hians, David and Shive's use of the property occurred "when the thick blackberry bushes and other foliage prevented both Plaintiffs and Defendants from seeing much of each others' property." As a result, "Defendants would have had little ability to know of Plaintiffs' use of the Disputed Area unless they were themselves in the Disputed Area at the same time as Plaintiffs' claimed use." The Hians argued they would only have reason to know of the use of the disputed property if David and Shive had constructed physical improvements such as a play area, storage shed, or fence.

The trial court granted summary judgment in favor of David and Shive. According to the trial court, David and Shive "or their predecessors in interest adversely possessed the disputed property no later than 2007." The court ordered David and Shive to prepare a legal description of the disputed area to be presented for entry of a final decree quieting title. While the court found David and Shive to be the prevailing party under RCW 7.28.083, it reserved a ruling on their request for attorney fees and costs.

After the trial court granted summary judgment for David and Shive, the Hians sought discretionary review of the decision alleging obvious error under RAP 2.3(b)(1).

A commissioner of this court concluded that the Hians had not demonstrated obvious error in the trial court's decision as to adverse possession and denied discretionary review.

David and Shive filed a motion for entry of final judgment and a motion for attorney fees. The trial court entered an order and decree quieting title against the Hians and in favor of David and Shive. The court awarded David and Shive attorney fees and costs of $22,381.19 and entered final judgment.

The Hians appeal.

## DISCUSSION

The Hians challenge the trial court's entry of the order quieting title to the disputed property, award of attorney fees, and entry of final judgment in favor of David and Shive.

The trial court granted summary judgment in favor of David and Shive after determining that they satisfied the elements of adverse possession. Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Neighbors v. King County, 15 Wn. App. 2d 71, 80, 479 P.3d 724 (2020); CR 56(c). We review a summary judgment order de novo. Id. at 80. "Summary judgment is subject to a burden shifting scheme. 'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601-02, 200 P.3d 695 (2009) (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). Although we review facts and inferences in the light

most favorable to the nonmoving party, "[o]nce there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues." Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142-43, 389 P.3d 626 (2016).

## Adverse Possession

In order to prevail on an adverse possession claim, the claimant must show that possession of the property was exclusive, actual and uninterrupted, open and notorious, and hostile for an uninterrupted period of 10 years. Ofuasia v. Smurr, 198 Wn. App. 133, 143, 392 P.3d 1148 (2017). "When real property has been held by adverse possession for ten years, such possession ripens into an original title. Title so acquired by the adverse possessor cannot be divested by acts other than those required where title was acquired by deed." El Cerrito, Inc. v. Ryndak, 60 Wn.2d 847, 855, 376 P.2d 528 (1962).

The Hians only challenge whether David and Shive have proven that their possession of the property was hostile and open and notorious. They contend that "[f]acts material to the question whether David and Shive exercised hostile possession of the land now in dispute are particularly within the knowledge of David and Shive, such that the matter should proceed to trial." They also argue that "David and Shive failed to present any factual evidence that Leigh or the Hians knew or should have known of the former's possession of the land now in dispute." We disagree.

A. Hostile Possession

David and Shive supported their claim of hostile possession with evidence that

they "utilized the lawn, maintained the vegetation, and treated the thicket as the northern boundary of their property," without permission. According to the Hians, this evidence is disputed as both the Hians and Leigh had walked the property "from time to time" and saw no evidence that David and Shive used the area. They contend the issue should proceed to trial to allow for testimony and cross-examination to resolve the evidentiary dispute and credibility issues.

"The hostility element requires simply 'that the claimant treat the land as his own against the world throughout the statutory period.'" Riley v. Andres, 107 Wn. App. 391, 397, 27 P.3d 618 (2001) (quoting Chaplin v. Sanders, 100 Wn.2d 854, 860-61, 676 P.2d 431 (1984)). The nature of the claimant's possession "will be determined solely on the basis of the manner in which he treats the property." Chaplin, 100 Wn.2d at 861.

While the Hians assert that the evidence is disputed, David and Shive's claim to have maintained the disputed area for the duration of their ownership of the neighboring property is uncontroverted. The lawn was mowed up to the thicket, the rhododendrons were tended, and the blackberry bushes were trimmed back when encroaching on the lawn. David and Shive provided sworn declarations that they performed this work. The Hians failed to introduce any evidence to the contrary such as evidence that they or their predecessor maintained the disputed property or that the area was wild and overgrown due to lack of maintenance. Thus, the Hians failed to provide specific facts to rebut the evidence of hostile possession as necessary to defeat David and Shive's motion for summary judgment.

B. Open and Notorious

The Hians also claim that David and Shive did not prove that their possession of

the property was open and notorious. According to the Hians, the record lacks evidence that they or their predecessor knew or should have known of David and Shive's possession of the property.

"A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it." Riley, 107 Wn. App. at 396. Whether acts are sufficiently open and notorious depends upon the character of the land. Chaplin, 100 Wn.2d at 863. "'The necessary use and occupancy need only be of the character that a true owner would assert *in view of its nature and location*.'" Id. (quoting Krona v. Brett, 72 Wn.2d 535, 539, 433 P.2d 858 (1967), overruled in part by Chaplin).

As noted above, the lawn and vegetation in the disputed property was tended and maintained. The Hians did not allege that they performed maintenance of the area or provided evidence from Leigh that he tended the disputed area while he owned the property. Given the clear evidence that somebody was mowing the lawn and trimming back any encroachment from the thicket, the title holder should have known that David and Shive, owners of the abutting lawn and property, were caring for the land.

Such maintenance is adequate to demonstrate open and notorious use of the nature of the property at issue. Riley addressed a similar dispute between neighbors on adjoining properties. 107 Wn. App. at 394. The plaintiffs "watered and pruned the plants, spread beauty bark, and pulled weeds" in the disputed area. Id. at 397. The court concluded that the plaintiffs' use of the land was open and notorious as "landscaping was the typical use for land of this character." Id.

10

The undisputed evidence in the record demonstrates that David and Shive performed similar tasks by mowing the lawn, pruning the rhododendrons, and trimming the blackberry bushes. They used the disputed area in a manner typical of the residential nature of the land. Moreover, sworn declarations from acquaintances demonstrate that David and Shive's use of the property was such that frequent visitors believed that they owned the disputed area. Based on the evidence, David and Shive's use of the property was open and notorious for the purpose of adverse possession.

The Hians failed to present specific facts sufficient to rebut David and Shive's contentions or raise any genuine issues of material fact as to the elements of adverse possession. The trial court did not err by granting summary judgment and the order quieting title to the disputed property in favor of David and Shive.

Attorney Fees

David and Shive requested, and the trial court awarded, attorney fees pursuant to RCW 7.28.083(3) which states that "[t]he court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just." The Hians do not dispute that RCW 7.28.083(3) authorizes an award of fees on the prevailing party in this case.

When attorney fees are authorized, we will uphold an award of fees unless we determine that the trial court manifestly abused its discretion. Workman v. Klinkenberg, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018). "The trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons." Id.

The Hians argue that the trial court abused its discretion by awarding attorney

fees without determining the award was "equitable and just" as required by RCW 7.28.083(3). Moreover, the Hians contend that the award was not equitable and just because "neither David nor Shive, by their actions or their words, gave the Hians reason to believe that the latter claimed to own the land now in dispute." In particular, the Hians note that David and Shive "stood by silently while the Hians constructed the fence."

While the trial court did not specifically state that an award of attorney fees was "equitable and just" in this case, that finding is inherent in the fact that the trial court made the award pursuant to RCW 7.28.083(3). Moreover, the trial court closely examined the hours and services submitted by the attorney for David and Shive to ensure that the award was reasonable. The court determined that some of the services were unrelated to the adverse possession claim and segregated those hours from the fee award. The court also excluded fees found to be duplicative and in excess of the time required on the matter. As a result, the court found $22,381.19 in fees and costs "to be reasonable and necessary."

The trial court properly relied on RCW 7.28.083(3) to award David and Shive, as the prevailing party in a claim for adverse possession, their "reasonable and necessary" attorney fees and costs. Thus, the trial court did not abuse its discretion with this award.

We affirm the summary judgment order, the order quieting title, and order awarding attorney fees.

_____
Coburn, J.

WE CONCUR:

_____
Feldman, J.

_____, ACJ